UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

LINDA ROBINSON and ESTATE OF
JOHN ROBINSON, by and through
LINDA ROBINSON, ADMINISTRATRIX                            PLAINTIFFS

v.                                         CIVIL ACTION NO. 3:10-cv-689-CRS

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY                                          DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on motion of the defendant, Nationwide Mutual Fire Insurance Company ("Defendant"), for Declaratory Judgment pursuant to 18 U.S.C. § 2201 and Fed.R.Civ.P. 57, holding that Defendant has no obligation to provide insurance coverage to the plaintiffs, Linda Robinson and the Estate of John Robinson, by and through Linda Robinson, Administratrix ("Plaintiff" and collectively, "Plaintiffs"), for any losses claimed as a result of the October 24, 2009 fire at the residence located at 3500 Tyrone Drive, Louisville, Kentucky. (DN 31). Plaintiffs have responded (DN 35) and Defendant has replied (DN 38), making this matter now ripe for adjudication. For the reasons set forth below, the motion will be granted.

We apply the standard of review applicable for motions for summary judgment, because both parties apply that standard in their pleadings. *See York v. Peoples Ben. Life Ins. Co.*, 2008 WL 336825 at *1 n.1 (W.D. Ky. Feb. 5, 2008) ("Although actually styled a 'Motion for Declaratory Judgment,' the Defendant's motion applies the standard of review applicable to motions for summary judgment and the Plaintiff responds to the motion as though it was one for summary

judgment- a point the Defendant does not dispute. As such, the Court will construe Defendant's motion as one for summary judgment."). A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). The evidence must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979).

Under Kentucky law, an insurance contract must be "liberally construed and all doubts resolved in favor of the insureds." *Kentucky Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992). The terms used in the insurance policies should be interpreted as they would be by the "average man." *James Graham Brown Found, Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1999). However, such liberal interpretations of insurance contract terms are not synonymous with strained ones. *K.M.R. v. Foremost Ins. Group*, 171 S.W.3d 751, 753 (Ky. Ct. App. 2005); *See also Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873-74 (Ky. 2002) (explaining that the rule of strict construction of insurance policies should not overcome "plain, clear language resulting in a strained or forced construction"); *General Exchange Ins. Corp. v. Kinney*, 129 S.W.2d 1014, 1017 (Ky. 1939) (stating that "unambiguous and clearly drafted exclusions which are not unreasonable are enforceable").

Defendant issued a policy of homeowner's insurance to Plaintiff, Linda Robinson, Policy No. 16 HO 071922 ("the Policy") and it is undisputed that the Policy was in effect at the time of the

fire at Plaintiff's residence. The Policy contains several exclusions to its coverage, which Defendant argues are applicable here.

First, the Policy excludes coverage for any increased hazard, which is the fault of the insured, stating:

> **Property Exclusions**
> 1. We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss:
> ...
> f) Increased Hazard, meaning any loss occurring while hazard is increased by means within the control and knowledge of an **insured**.

(DN 5, Attachment 2, the Policy). An "insured" under the Policy is defined as:

> "INSURED" means you and the following if residents of your household at the **residence premises**:
> a) your relative
> b) any other person under age 21 and in the care of you or your relatives.

(DN 5, Attachment 1, the Policy). Plaintiff, Linda Robinson contracted for the Policy, but it is undisputed that her son, John Robinson also constituted an "insured" under the Policy because he was living at the residence with her at the time of the fire on October 24, 2009.

Defendant has presented Louisville Fire and Rescue reports (DN 10, Attachment 4), Louisville Metro Health Department records (DN 10, Attachment 2); (DN 31, Attachment 2), and the affidavit of a police officer with experience determining the causes of fires and training in narcotics production, who examined the case file listing the items found at the scene of the fire (DN 31, Attachment 3). All of Defendant's evidence shows that the fire was started by the actions of John Robinson in manufacturing methamphetamine. Plaintiffs only object to the admissibility of the evidence, arguing that the records are inadmissible pursuant to FRE 803(8)(c). (DN 35).

The United States Court of Appeals for the Sixth Circuit has approved the admission into evidence of public records or reports under Federal Rule of Evidence 803(8)(c) on multiple occasions and has set out a four part test for consideration when determining the admissibility of evidence under rule 803.  The factors listed include: 1) the timeliness of the evidence; 2) the skill or experience of the official; 3) whether a hearing was concluded; and 4) possible motivational problems.  *Baker v. Elcona Homes Corp.*, 588 F.2d 551, 558 (6th Cir. 1978) (citing Fed.R.Evid. 803 Notes of Advisory Committee); *see also Amerisure Ins. Co. v. Ex-Cell-O Corp.*, 134 F.3d 370, 1998 WL 30817 at *5 (6th Cir. Jan. 22, 1998).

Applying these factors to the evidence here, the records produced by the Louisville Metro Fire Department, Louisville Fire and Rescue Arson Bureau, and Louisville Metro Public Health and Wellness are admissible.  The records were all made immediately at the scene or near the time of occurrence.  The records were created by individuals experience in the field.  The purpose of the government records was for interdepartmental use, which provides some assurance of accuracy.  Last, there is no evidence that any motives were involved in the preparation that would indicate a lack of trustworthiness.  Records of government officers include "opinions, conclusions, and evaluations, as well as facts, fall within the Rule 803(8)(c) exception, and enjoy a presumption of admissibility."  *United States v. Midwest Fireworks Mfg. Co., Inc.*, 248 F.3d 563, 566 (6th Cir. 2001) (quoting *Bank of Lexington & Trust Co. v. Vining-Sparks Sec., Inc.*, 959 F.2d 606, 616 (6th Cir. 1992)).

Concluding that Defendant's evidence is admissible, we must now determine whether the conduct of John Robinson in producing methamphetamine constituted an increased hazard, barring coverage under the Policy.  Kentucky courts have held that increased hazard exclusions are valid

and enforceable. *See e.g., Howard v. Kentucky & Louisville Mut. Ins. Co.*, 52 Ky. 282, 289 (Ky.App. 1852) (holding an insured violates his or her duty of good faith by doing any act which increases the risk for loss and that such loss should be the insured's responsibility and not the insurer's). Kentucky courts have not directly addressed whether methamphetamine production constitutes activity within an increased hazard provision of an insurance contract, but the Kentucky Court of Appeals has held that the production of moonshine in a residence is an increased hazard. *See Colker v. Connecticut Fire Ins. Co.*, 7 S.W.2d 502, 505 (Ky.App. 1928) ("The operation of the moonshine still increased the hazard to the property.").

Further, at least one court in another jurisdiction has held that the production of methamphetamine increases the hazard and we consider that decision. *See Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985) (stating that where the state's highest court has not addressed the issue, a federal court may consider decisions from other jurisdictions). In *Farmers Insurance Company of Oregon v. Trutanich*, the Court of Appeals of Oregon stated, "The operation of an illegal methamphetamine lab is an increase in the hazard." 858 P.2d 1332 (Or. Ct. App. 1993) (although holding that the increased hazard provision was inapplicable to bar coverage because the insured under the policy rented the property and was unaware of the methamphetamine production).

We anticipate that Kentucky courts would hold that the action of producing illegal methamphetamine falls within an increased hazard exclusion of an insurance policy. Therefore, we hold that the conduct of John Robinson in producing methamphetamine within Plaintiff's residence increased the hazard that the residence would be destroyed by fire or explosion and was excluded by the Policy.

Defendant also argues that the conduct of John Robinson falls within another exclusion contained in the Policy, namely an exclusion for intentional acts of an insured.  The Policy exclusion Defendant relies on states:

> **Property Exclusions**
> 1. We do not cover loss to any property resulting directly or indirectly from any of the following.  Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss:
> ...
> g) Intentional Acts, meaning loss resulting form an act committed by or at the direction of an insured that may reasonably be expected to result from such acts; or is the intended result from such acts.  Intentional acts include criminal acts.  Such acts exclude coverage for all insureds.

(DN 5, Attachment 2, The Policy).  Defendant argues that the court should infer intent because operating an illegal methamphetamine laboratory is a criminal offense which is as likely to cause injury as shooting a loaded weapon or striking someone in the face.  (DN 31, Attachment 1, Defendant's Memorandum in Support of its Motion for a Declaratory Judgment) (citing *Nationwide Mut. Fire Ins. Co. v. Pelgen*, 241 S.W.3d 814, 817 (Ky.App. 2007) (holding that shooting a loaded weapon into a crowd fell within the intentional act exclusion of an insurance policy); *Walker v. Economic Preferred Ins. Co.*, 909 S.W.2d 343, 345 (Ky.App. 1995) (holding that punching someone in the face, even without a subjective intent to cause harm, is an intentional act for purposes of determining insurance coverage)).

Under Kentucky law, intent may be inferred on summary judgment regardless of whether the objective or subjective test is used.  *Nationwide Mut. Fire Ins. Co. v. James*, 2011 U.S. Dist. LEXIS 10802, *7-8 (E.D. Ky. Feb. 3, 2011).  Under the doctrine of inferred intent, "certain actions by the insured give rise to an 'inferred intent,' regardless of the actor's actual intent, so as to preclude coverage."  *Id*. (quoting *Pelgen*, 241 S.W.3d at 814).  "Kentucky courts apply this doctrine

when the act giving rise to the loss is so inherently injurious, or substantially certain to result in some injury, that the intent to injure, or the expectation that injury will result, can be inferred as a matter of law." *Id*. (quoting *Thompson v. West American Ins. Co.*, 839 S.W.2d 579, 581 (Ky.App. 1992)).

Kentucky courts have not ruled on whether producing methamphetamine constitutes an intentional act for purposes of insurance coverage. Producing methamphetamine involves heating a shallow open container with a propane torch and a reasonable person could conclude that this conduct is so "inherently injurious" that the intent for injury to occur could be inferred as a matter of law. However, because we have already concluded that coverage is excluded based on the increased hazard exclusion of the Policy, we decline to anticipate how Kentucky courts would rule on the application of an intentional act exclusion to methamphetamine production.

An order consistent with this opinion will be entered this date.

March 14, 2012

**Charles R. Simpson III, Judge**
**United States District Court**